**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EVIE BIRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-532-SLP |
| | ) | |
| MILLIS LIMITLESS | ) | |
| TRANSPORTATION, LLC, a foreign | ) | |
| corporation; and | ) | |
| JOSE CARBAJAL, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court are two Motions for Partial Summary Judgment [Doc. Nos. 39, 40] filed by Defendants Millis Limitless Transportation, LLC (Millis) and Jose Carbajal (Mr. Carbajal), respectively. Plaintiff Evie Bird (Ms. Bird) has responded to both motions [Doc. Nos. 57, 58], and both Defendants have replied [Doc. Nos. 63, 66]. Accordingly, the matters are fully briefed and ready for determination.

## I. <u>Introduction</u>

Ms. Bird brings this action for injuries sustained in an automobile accident with Mr. Carbajal in December of 2023. Mr. Carbajal was driving a semi-truck in the course and scope of his employment with Millis when the accident occurred. Ms. Bird brings claims for negligence and negligence per se against Mr. Carbajal. She claims Millis is vicariously liable for the accident, and also brings direct claims for negligent entrustment, negligence, and negligence per se against Millis. Ms. Bird seeks punitive damages in connection with her claims.

Millis moves for summary judgment on Ms. Bird's claims for negligent entrustment, vicarious liability premised on negligence per se, and Ms. Bird's request for punitive damages. [Doc. No. 39] at 7. Mr. Carbajal moves for summary judgment on Ms. Bird's claims for negligence per se and her request for punitive damages. [Doc. No. 40] at 6. Accordingly, Ms. Bird's claim for ordinary negligence against Mr. Carbajal and any vicarious liability of Millis associated with that claim are not presently at issue.

## II.  <u>Governing Standard</u>

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Koel v. Citizens Med. Ctr., Inc.*, 128 F.4th 1329, 1333-34 (10th Cir. 2025) (quoting *Ingram v. Muskogee Reg'l Med. Ctr*., 235 F.3d 550, 551 (10th Cir. 2000), then citing Fed. R. Civ. P. 56(c)). The court "review[s] the record in the light most favorable to the non-moving parties to determine if there is a genuine issue of material fact, which would require the case to go to trial." *Id*. (citing *Urb. By & Through Urb. v. King*, 43 F.3d 523, 525 (10th Cir. 1994)).

## III.  <u>Undisputed Material Facts</u>[1]

The subject accident occurred on December 21, 2023 at the intersection of State Highway 9 and Bankers Avenue near the entrance to Riverwind Casino south of Norman, Oklahoma. Ms. Bird was driving a 2013 Toyota Corolla, and Mr. Carbajal was driving a

---

[1] Included here are those material facts supported by the record and not genuinely disputed in the manner required by Fed. R. Civ. P. 56(c).

2009 Freightliner semi-truck.  Mr. Carbajal was acting within the scope and course of his employment with Millis at the time of the accident.  Millis is a registered motor carrier based in Odessa, Texas.

Ms. Bird was stopped at a red light behind other vehicles when the accident occurred.  *See* Carbajal Dep. [Doc. No. 58-1] at 14-15.[2]  As he approached, Mr. Carbajal did not immediately recognize Ms. Bird had stopped.  Mr. Carbajal braked but was unable to stop before colliding with the back end of Ms. Bird's vehicle.  Upon impact, Ms. Bird's vehicle moved forward a short distance and struck the vehicle in front of her.

The speed limit in the area where the accident occurred was 45 miles per hour.  An accident reconstruction specialist, Jason Riddle, opines that Mr. Carbajal was traveling between "21.19 mph and 25.82 mph" at the time of impact.  Riddle Rep. [Doc. No. 39-4] at 4.[3]  There is no dispute Mr. Carbajal was slowing down when the accident occurred, but the parties do not refer to any evidence as to how fast Mr. Carbajal was going before he braked.

It was raining when the accident occurred, and the Newcastle Police Department noted that Mr. Carbajal was following too closely.  [Doc. No. 39-2] at 4.  Millis acknowledges the accident was caused by Mr. Carbajal not leaving enough space and not driving at a slower speed such that he would have been able to stop during rainy conditions.

---

[2] Citations to the record reference the Court's ECF pagination.

[3] Mr. Carbajal testified that he was going about 30 miles per hour at impact. [Doc. No. 58-1] at 10.

*See* Mejia Dep. [Doc. No. 58-2] at 13.  Ultimately, there is no dispute Mr. Carbajal was at fault and Ms. Bird did not do anything to cause the accident.[4]

The subject accident occurred two days after Millis hired Mr. Carbajal.  The same day he was hired, Mr. Carbajal drove from Odessa, Texas to Oklahoma City.  He arrived in Oklahoma City sometime between midnight and 2:00 in the morning.  The next day, Mr. Carbajal drove a twelve-hour shift from 2:30 in the afternoon to 3:00 in the morning.  Then the following day, Mr. Carbajal began driving at 2:30 and drove for three hours prior to the accident.

Millis required a driving application from Mr. Carbajal prior to employment.  Another Millis employee, Jacqueline Castenella, filled out the application for him.  *See* Mejia Dep. [Doc. No. 57-1] at 13-14.  Mr. Carbajal's application listed "N/A" under the sections asking about any accidents, traffic convictions, or forfeitures in the last three years.  *See* [Doc. No. 39-1].  The application also listed "NO" in response to questions as to whether he had ever been denied a license or permit, whether he had any license suspended or revoked, whether he had been convicted of a felony, and whether there was any reason he might be unable to perform the functions of a commercial driving job.

---

[4] Ms. Bird repeatedly references documents related to the accident that Millis did not retain, such as WhatsApp messages, drug test results, phone records, and a narrative from the day of the wreck. Resp. [Doc. No. 58] at 3, 5.  But Ms. Bird did not file a motion to compel or a spoliation motion, and the "inference" she references goes beyond viewing the facts in the light most favorable to her as the nonmoving party.  *Cf. St. Clair v. Edwards*, No. CIV-19-00981-PRW, 2021 WL 1131711, at *2 (W.D. Okla. Mar. 24, 2021) ("[T]he proper vehicle for an allegation of spoliation is a Rule 37 motion brought during the discovery phase. Such a motion allows the Court to effectively investigate, remedy, and sanction such conduct (if proven). Summary judgment is not the appropriate avenue for determining whether information should have been produced in discovery." (citations omitted)).

Mr. Carbajal's application stated he worked as a commercial driver since 2017, and he had never been terminated for unsafe driving. *See* [Doc. No. 39-1] at 1-2. It also stated that he was properly licensed through October 2025. Millis confirmed that Mr. Carbajal had an international license, and its corporate representative testified that another Millis employee contacted one of Mr. Carbajal's prior employers based in the United States. [Doc. No. 57-1] at 14-15. Millis did not retain any documentation related to investigation of Mr. Carbajal's prior employment, nor did it obtain motor vehicle records from Mexico or San Diego where Mr. Carbajal previously worked.

Millis communicated with Mr. Carbajal in Spanish, and it did not know whether he was able to speak English well enough to converse with the general public or to understand highway signs and signals. [Doc. No. 57-1] at 28-30. Millis's corporate representative, Alexis Mejia, rode in a truck with Mr. Carbajal for a road test the day he was hired, but Millis did not retain a copy of a certification of Mr. Carbajal's road test. *See* Mejia Dep. [Doc. No. 39-5] at 2-3; *see also* Mejia Dep. [Doc. No. 57-1] at 6-7.[5]

---

[5] Ms. Bird asserts there is fact issue as to whether a road test was performed, pointing to portions of Mr. Mejia's testimony where he said the road test was "done verbally." Resp. [Doc. No. 57] at 10; Mejia Dep. [Doc. No. 57-1] at 6-7. But a few lines later, Mr. Mejia states more specifically that he and Mr. Carbajal "got in a truck" and that he and Mr. Carbajal were the only individuals "in the truck." [Doc. No. 57-1] at 7. Ms. Bird offers no other evidence or argument suggesting the road test was not done in person, and the incidental statements regarding the road test being done "verbally" appear to relate to questions regarding lack of documentation memorializing the road test. *See id.* at 6; *see also* Mejia Dep. [Doc. No. 39-5] at 3. Accordingly, Ms. Bird has not shown there is a dispute of material fact regarding the road test. *See Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1100 n.21 (10th Cir. 2025) (noting summary judgment was proper because the nonmoving party's citations to the record "fail to match the assertion, contain only generalized and conclusory statements, or require one inference too many to adequately support the assertion.").

**IV.   Discussion**

In this diversity action, the Court applies the substantive law of the forum state. *New Hampshire Ins. Co. v. TSG Ski & Golf, LLC*, 128 F.4th 1337, 1344 (10th Cir. 2025). The parties also agree Oklahoma law governs.  In their Motions, Millis and Mr. Carbajal make the same argument that Ms. Bird's claims of negligence per se premised on 47 Okla. Stat. §§ 11-901b and 11-801 are untenable under Oklahoma law because those statutes do not provide objective standards of conduct.  *See* [Doc. No. 39] at 20-26; *see also* [Doc. No. 40] at 10-14.[6]

Millis and Mr. Carbajal separately include additional arguments for dismissal of claims premised on negligence per se.  In his Motion, Mr. Carbajal alternatively maintains Ms. Bird has failed to present sufficient evidence to establish violations of §§ 11-901b and 11-801.  [Doc. No. 40] at 14.  He also asserts Ms. Bird failed to properly plead claims based on "rules of the road" or the "commercial motor vehicle driver's manual."  [Doc. No. 40] at 15-16.  In its Motion, Millis asserts Ms. Bird's negligence per se claim premised on Federal Motor Carrier Safety Regulation (FMCSR) § 392.2 fails because it similarly does not provide an objective standard of conduct.  [Doc. No. 39] at 20-21.

Millis also seeks summary judgment on Ms. Bird's negligent entrustment claim. Millis contends the negligent entrustment claim is unnecessary and superfluous because it has admitted Mr. Carbajal was acting within the scope of his employment.  [Doc. No. 39] at 14-18.  Millis alternatively asserts that there is no evidence to support a claim of

---

[6] For its part, Millis asserts any claim of vicarious liability for negligence of Mr. Carbajal premised on those statutes fails.  [Doc. No. 39] at 21-26.

negligent entrustment.  *Id.* at 18-20.  Finally, both Millis and Mr. Carbajal argue there is insufficient evidence to support an award of punitive damages.  *See* [Doc. No. 39] at 26-30; *see also* [Doc. No. 40] at 16-19.  The Court addresses each argument in turn.

### A.    Negligence Per Se

To establish negligence per se based on a statutory violation, a party must show: (1) the injury was caused by the statute's violation; (2) the injury was of the type intended to be prevented by the statute; and (3) the injured party was a member of the class meant to be protected by the statute. *Hamilton v. Allen*, 852 P.2d 697, 699 (Okla. 1993).  As relevant here, "the standard of duty must be fixed and defined by law and be the same in all circumstances."  *Smith v. Barker*, 419 P.3d 327, 333 (Okla. Civ. App. 2017) (citing *Chicago R.I. & P. Ry. Co. v. Pitchford*, 143 P. 1146 (Okla. 1914)).

Negligence per se "is not appropriate where the terms of the statute do not impose positive objective standards."  *Id.* (holding jury instructions on negligence per se were not appropriate because "the statutory duties imposed upon the operator of a vehicle are undefined or defined only in abstract general terms."); *see also Wade v. Reimer*, 359 P.2d 1071, 1073 (Okla. 1961) (finding no fundamental error in the trial court not instructing on negligence per se because the terms of the relevant statute "do not impose any positive objective standards nor do they prescribe any greater or lesser degree of care than that required of a driver under the prevailing rules at common law.").  With these principles in mind, the Court turns to Millis and Mr. Carbajal's arguments that 47 Okla. Stat. §§ 11-901b and 11-801 and FMCSR § 392.2 fail as a matter of law.  *See* [Doc. No. 39] at 21-26; *see also* [Doc. No. 40] at 10-14.

7

### i. State Statutes

47 Okla. Stat. § 11-901b provides, in pertinent part: "[t]he operator of every vehicle, while driving, shall devote their full time and attention to such driving."  And as relevant here, section 11-801 provides:

> Any person driving a vehicle on a highway shall drive at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed greater than will permit the driver to bring it to a stop within the assured clear distance ahead.

*Id.* § 11-801(A).

The Court agrees with Judge DeGiusti's ruling in *Kittles v. Harav, L.L.C.* that summary judgment is appropriate as to claims premised on §§ 11-901b, 11-801(A) because those statutes do not impose positive objective standards and they are redundant of duties owed at common law.  *See Kittles*, No. CIV-18-720-D, 2020 WL 1159396, at *4 (W.D. Okla. Mar. 10, 2020) (granting summary judgment on the same claims).  In particular, the Court concurs with the statement in *Kittles* that "[t]he language in the statute at issue in *Wade* is identical to the language in [§ 11-801(A)]."  *Id.*  And section 11-901b is even more generic and redundant to common law negligence.[7]  Accordingly, summary judgment

---

[7] The other federal case Ms. Bird cites, *CTC, Inc. v. Schneider Nat'l Inc.*, has no relevant application here.  *See* No. CIV-20-1235-F, 2021 WL 5815833 (W.D. Okla. Dec. 7, 2021).  There was no dispute as to whether the statute imposed a positive objective standard of conduct—the only issue was whether the plaintiff had identified a particular statute upon which its negligence per se claim was based.  *Id.* at *3.  The same is true for the other case Ms. Bird cites, *Gowens v. Barstow*, 364 P.3d 644 (Okla. 2015).  Although the court held "[i]t was not an abuse of discretion for the trial court to consider § 11–801 as part of the circumstances from which she found [the defendant] acted 'negligently[,]'" it did so in the wake of an "attack on the competency of the evidence" rather than a legal argument that the statute was redundant of common law and did not impose a positive objective standard.  *See id.* at 654.

is appropriate as to Ms. Bird's claims of negligence per se premised on §§ 11-901b, 11-801(A), and the Court need not address Mr. Carbajal's alternative argument regarding whether Ms. Bird has sufficient evidence to support those claims.

### ii.  Federal Motor Carrier Safety Regulation: 49 C.F.R. § 392.2

The Federal Motor Carrier Safety Regulation Ms. Bird references, 49 C.F.R. § 392.2, provides:

> Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with.

*Id.*  Two federal courts in Oklahoma have found § 392.2 is "too vague to meet the positive objective standard test under Oklahoma . . . law." *Nichols v. Gipson*, No. CIV-21-779-D, 2021 WL 5762800, at *3 (W.D. Okla. Dec. 3, 2021) (quoting *Conway v. Lone Star Transporation, LLC*, Case No. 19-CV-0658-CVE-FHM, 2020 WL 609750, at *5 (N.D. Okla. Feb. 7, 2020)).

This Court agrees with the rationales and conclusions in *Nichols* and in *Conway*. Although courts in other cases cited by Ms. Bird have held other federal regulations may provide relevant standards of care for claims of negligence per se, none of those cases dealt with the precise regulation at issue.  *See* Resp. [Doc. No. 58] at 8-10.  Accordingly, Mr. Carbajal is entitled to judgment as a matter of law on Ms. Bird's claim of negligence per se premised on 49 C.F.R. § 392.2, and the same is true for any vicarious liability claim asserted against Millis on that basis.

### iii. Additional Claims of Negligence Per Se

In her Amended Complaint,[8] Ms. Bird only references 47 Okla. Stat. §§ 11-801, 11-901b and "FMCSR § 392.2." *See* [Doc. No. 1-4] ¶¶ 13-14. Then in her summary judgment responses, Ms. Bird references approximately fifteen new state statutes, state regulations, and federal regulations. *See* [Doc. No. 57] at 13; *see also* [Doc. No. 58] at 5-6. Ms. Bird does not, however, make any legal argument regarding these additional claims of negligence per se, nor does she connect any one of these claims to the facts of this case. *See* [Doc. No. 57] at 26-29; *see also* [Doc. No. 58] at 6-13.

In their replies, Millis and Mr. Carbajal object to introduction of these new claims of negligence per se. [Doc. No. 63] at 2; [Doc. No. 66] 2. They argue assertion of new claims in a summary judgment response is improper. *Id.* They also argue Ms. Bird did not request leave to amend and that they have been prejudiced by not having an opportunity to fully respond to the new claims. *Id.*

Under the circumstances of this case, the Court finds Ms. Bird should not be permitted to assert new claims of negligence per se in her summary judgment response. Ms. Bird has not at any point moved for leave to amend or otherwise addressed the ordinary standards governing leave to amend. *Cf. Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023) (explaining it would "rarely be appropriate" to treat new claims asserted in a summary judgment response as "a constructive motion to amend," but a court electing to do so should "apply the familiar standards governing when leave to amend should be

---

[8] The Court uses the nomenclature applicable in federal court.

granted, paying particular attention to the potential for prejudice to other parties."); *see also Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989-90 (10th Cir. 2019) (a party seeking amendment after expiration of the scheduling order deadline to do so must satisfy Fed. R. Civ. P. 15(a) and show "good cause" under Fed. R. Civ. P. 16(b)(4)). Absent any explanation or development of these claims in her responses, it is wholly unclear whether Ms. Bird's new claims are based on evidence obtained in discovery or facts that have been apparent from the outset. *See* [Doc. No. 57] at 13; *see also* [Doc. No. 58] at 5-6; *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (Good cause may be satisfied if "a plaintiff learns new information through discovery" but the claims are barred "[i]f the plaintiff knew of the underlying conduct but simply failed to raise [the] claims").

This case is in its final stages, and allowing amendment or constructive amendment would prejudice Millis and Mr. Carbajal by depriving them an opportunity to brief those issues on summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."); *see also Schlacter–Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1990) ("A motion for leave to amend is not a vehicle to circumvent summary judgment."), *overruled on other grounds by Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001); *Hexion Specialty Chem., Inc. v. Oak–Bark Corp.*, No. 7:09-cv-105-D, 2011 WL 4527382, at *8 (E.D.N.C. Sept. 28, 2011) (explaining that the general prohibition on new claims raised after discovery without amendment of the complaint aligns with the

11

fundamental purpose of a complaint, which is to put the party's "opponent and the court on notice of the claims in the case."). Accordingly, Ms. Bird will not be permitted to assert her fifteen additional theories of negligence per se.

As a final matter on negligence per se, Mr. Carbajal argues for dismissal of any claims in Ms. Bird's Amended Complaint that are premised on violation of "safe driving industry standards set out in the Federal Motor Carrier Safety Regulations" or "the commercial motor vehicle driver's manual" as inadequately pleaded. [Doc. No. 40] at 15-16. Ms. Bird argues in response that her claims were adequately pleaded under Oklahoma pleading standards and Mr. Carbajal's dismissal argument is brought too late. [Doc. No. 58] at 10-13. Ms. Bird does not specifically discuss either of the claims Mr. Carbajal references or the contents of her Amended Complaint. *See id.*

Mr. Carbajal's argument is properly characterized as a motion for judgment on the pleadings, which may be brought "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). The governing standard for a Rule 12(c) motion is the same as that which Mr. Carbajal references in his motion: the Court considers whether Ms. Bird has stated a claim for relief that is plausible on its face. *See Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).").

Aside from her claim based on 49 C.F.R. § 392.2, addressed above, the Court agrees with Mr. Carbajal that Ms. Bird's claims are inadequately pleaded because she wholly fails to identify any regulation or any provision of the commercial vehicle driver's manual upon

which her claims are based, nor does she reference any factual allegations that support such claims. *See* Am. Compl. [Doc. No. 1-4] at 2-3; *see also Sanchez*, 870 F.3d at 1199 (Courts "refuse to accept mere labels and legal conclusions as true.").[9]  Accordingly, to the extent Ms. Bird's generic references to the FMCSR and commercial motor vehicle driver's manual may be construed as independent claims, they are subject to dismissal.

### B.    Negligent Entrustment

As noted, the parties dispute whether Ms. Bird's negligent entrustment claim is unnecessary and superfluous due to Millis's stipulation that Mr. Carbajal was acting within the scope of his employment when the accident occurred. *See* Mot. [Doc. No. 39] at 13-18; *see also* Resp. [Doc. No. 57] at 14-20.  Millis alternatively contends that Ms. Bird cannot present evidence to establish negligent entrustment. *Id.* at 18-20.  Although the Court agrees with Ms. Bird that negligent entrustment is viable despite Millis's stipulation, summary judgment is warranted on this claim because Ms. Bird lacks evidence on the second element of negligent entrustment.

### i.    Viability of the Negligent Entrustment Claim

Millis primarily relies on the Supreme Court of Oklahoma's decision in *Jordan v. Cates*, 935 P.2d 289 (Okla. 1997).  That case involved claims of battery, respondeat

---

[9] Moreover, the Court has found Ms. Bird may not assert new claims of negligence per se at this juncture, and any claims embedded within her highly generic reference to the FMCSR would be impermissible for the same reasons.  Finally, any claim based on violation of the "commercial motor vehicle driver's manual" also fails for a more fundamental reason: "[t]he Court has not found any relevant authority recognizing the CDL Manual as having 'the full force and effect of law.'" *Nichols*, 2021 WL 5762800, at *3 (quoting *Howard v. Zimmer, Inc.*, 299 P.3d 463, 468 (Okla. 2013)).

superior, and negligent hiring and retention associated with an altercation between a convenience store clerk and a patron. *Id.* at 291–92. The defendant that owned the store stipulated that the clerk was acting within the scope of his employment during the incident. *Id.* On appeal, the Supreme Court of Oklahoma affirmed dismissal of the negligent hiring and retention claim, holding: "where the employer stipulates that liability, if any, would be under the *respondeat superior* doctrine . . . any other theory for imposing liability on the employer [is] unnecessary and superfluous." *Id.* at 293.

Ms. Bird relies on the Supreme Court of Oklahoma's more recent decision in *Fox v. Mize*, 428 P.3d 314 (Okla. 2018), *as corrected* (Oct. 2, 2018). As here, that case involved claims against a commercial vehicle driver and his employer after an automobile accident, and the employer stipulated that the driver was acting in the scope of his employment. *Id.* at 317-319. The employer moved to dismiss negligent hiring and negligent entrustment as unnecessary and superfluous in light of its stipulation. *Id.* at 318. The district court granted the motion as to negligent hiring but denied the motion as to negligent entrustment. *Id.*

The Supreme Court of Oklahoma granted certiorari "to address a recurring issue in the state and federal district courts across the state; that is, whether an employer's stipulation that an employee was acting in the course and scope of employment at the time of a collision bars a plaintiff's negligent entrustment claim against the employer." *Id.* at 318. The court answered that question in the negative, holding:

> [A]n employer's liability for negligently entrusting a vehicle to an unfit employee is a separate and distinct theory of liability from that of an employer's liability under the respondeat superior doctrine. An employer's stipulation that an accident occurred during the course and scope of employment does <u>not</u>, as a matter of law, bar a negligent entrustment claim.

14

*Id.* at 322.[10]

The holding of *Fox* squarely governs in this case because Ms. Bird only asserts negligent entrustment. Although there has been some debate after *Fox* as to the viability of other claims such as negligent hiring where an employer stipulates to scope of employment, *Fox*'s application in this case could not be clearer: "[a]n employer's stipulation that an accident occurred during the course and scope of employment does <u>not</u>, as a matter of law, bar a negligent entrustment claim." *Id.* at 322. Accordingly, Millis's stipulation does not render Ms. Bird's negligent entrustment claim unnecessary and superfluous.

### ii.    Evidence Regarding the Negligent Entrustment Claim

Liability for negligent entrustment of a vehicle may be imposed only when the following elements are established: (1) a person who owns or has possession and control of an automobile allowed another driver to operate the automobile; (2) the person knew or reasonably should have known that the other driver was careless, reckless, and incompetent; and (3) an injury was caused by the careless and reckless driving of the automobile. *Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003); *see also Fox*, 428 P.3d at 320

---

[10] The *Fox* court distinguished *Jordan* "because *Jordan* involved a battery claim against an employee and a negligent hiring claim against the employer" while the appeal in *Fox* did not involve a negligent hiring claim. *Id.* The court acknowledged "the tension in [its] case law" because, as explained by Judge Heaton: "'[i]t is difficult to discern a persuasive basis for treating a claim for negligent entrustment differently from a claim for negligent hiring' because both 'presumably rely on the employer's own acts or negligence.'" *Id.* at 322 n.12 (quoting *Warner v. Miller*, No. CIV-16-0305-HE, 2017 WL 11556453, at *2 (W.D. Okla. Feb. 10, 2017)). Nevertheless, the *Fox* court reiterated negligent hiring was not at issue in the appeal and simply stated: "for now, the holding in *Jordan* is limited to its facts."

("Negligent entrustment requires proof that an individual supplies a chattel for the use of another whom the supplier knows or should know is likely to use the chattel in a way dangerous and likely to cause harm to others."). Generally, "[t]he question of negligent entrustment is one of fact for the jury, and may be proven by circumstantial as well as positive or direct evidence." *Green*, 70 P.3d at 871.

The Court agrees with Millis that Ms. Bird offers no evidence that Millis knew or reasonably should have known Mr. Carbajal was careless, reckless, and incompetent as required under Oklahoma law. Ms. Bird devotes the vast majority of her response on this issue to a legal argument as to whether evidence of negligent entrustment has to be similar to the factual circumstances of the accident, but she hardly addresses the factual basis for her negligent entrustment claim. *See* Resp. [Doc. No. 57] at 20-26. To that end, Ms. Bird generically alleges that Millis: (1) "failed to investigate [or confirm] any of the information provided by [Mr.] Carbajal"; (2) provided Mr. Carbajal "with no training and likely failed to require the necessary road test"; (3) allowed Mr. Carbajal to operate a vehicle even though he was unable to read or understand English. *Id.* at 20-21.

Tellingly, Ms. Bird does not support any of these assertions with citations to evidence in the record or even the fact section of her response. *See id.* Except for that third point about a language barrier, Ms. Bird's contentions are either unsupported by the evidence in the record or derived from broad generalizations the record does not fully support.[11] *Id.* at 20-21. This is insufficient. *See Double Eagle Alloys*, 134 F.4th at 1100

---

[11] In some of the instances Ms. Bird presumably refers to, there is testimony that Millis did inquire about Mr. Carbajal's background (like his license and prior employment), but it did not retain any

n.21 (noting summary judgment was proper in part because "cited portions of the record fail to match the [plaintiff's] assertion, contain only generalized and conclusory statements, or require one inference too many to adequately support the assertion.").

Ms. Bird's argument primarily depends on lack of documentation associated with Millis hiring or vetting Mr. Carbajal, but she identifies no evidence of knowledge—i.e., information Millis knew or should have known about that suggests Mr. Carbajal was careless, reckless, and incompetent.[12]  *See McGinley v. Am. Dump Trucks, Inc.*, No. CIV-20-408-G, 2021 WL 4517687, at *5 (W.D. Okla. Sept. 30, 2021) (granting summary judgment on negligent entrustment where "[p]laintiff protests that [the employer] failed to keep a record of [the driver's] driving qualifications or other pertinent documents, [but] she does not argue or otherwise demonstrate that their contents would have put [the employer] on notice that [the driver] was careless, reckless, or unqualified.").  Put differently, Ms. Bird cites no evidence that suggests Millis would have found anything concerning as to Mr. Carbajal had it more thoroughly investigated or retained information.

There is no evidence, for example, that Millis entrusted Mr. Carbajal to drive its vehicles "despite knowing that he was drinking on the job regularly, or that he was recently involved in several preventable accidents."  *See Edwards*, 2021 WL 1131711 at *4 (granting summary judgment on negligent entrustment where there were "no factual

---

records on the topic.  The same is true for Mr. Carbajal's road test: Millis testified that an in-person road test did occur, and it did not document that information.  Again, Ms. Bird offers no evidence to the contrary.

[12] The Court reiterates that Ms. Bird did not file a motion to compel or a spoliation motion.  And nothing in the record suggests Ms. Bird sought any such information in discovery either via document requests to Millis, subpoenas to nonparties, or even by searching public records.

allegations that establish that [the employer] knew or reasonably should have known that [the driver] was a careless, reckless or incompetent driver" and noting examples of such evidence). At most, the record suggests Millis knew or should have known Mr. Carbajal was unable to read or speak English, but Ms. Bird fails to explain how that language barrier suggests he was careless, reckless, or incompetent.

For all these reasons, Millis is entitled to summary judgment on Ms. Bird's claim of negligent entrustment.

### C.    Punitive Damages

Under Oklahoma law, punitive damages are generally considered to be an element of recovery of the underlying cause of action; a request for punitive damages is not a separate cause of action. *Rodebush ex rel. Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993). Whether a plaintiff has competent evidence to support a punitive damage award is an issue of law and a gatekeeping function of the court. *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005); *see also Estrada v. Port City Properties*, 258 P.3d 495, 504 (Okla. 2011); *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 638 (Okla. Civ. App. 2010).

Punitive damages are not recoverable unless, at a minimum, a plaintiff shows evidence that the defendant was "guilty of reckless disregard for the rights of others." *See* 23 Okla. Stat. § 9.1(B); *see also Badillo*, 121 P.3d at 1106. Reckless disregard is established by showing that the defendant "was either aware, or did not care, that there was a substantial and unnecessary risk that [his/her/its] conduct would cause serious injury to others." *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015) (quoting OUJI-Civ. No. 5.6).

Ms. Bird references no such evidence. In her responses, Ms. Bird asserts Mr. Carbajal was driving too fast for rainy conditions and following too closely. [Doc. No. 57] at 30-31; [Doc. No. 58] at 14. These undisputed facts are nothing more than ordinary negligence and do not rise to the level of gross negligence or recklessness such that an instruction on punitive damages would be appropriate. *See Hinds v. Warren Transport, Inc*., 882 P.2d 1099, 1102 (Okla. Civ. App. 1994) ("[T]he mere happening of an accident as a result of inadvertence on the part of the responsible party is insufficient to constitute gross negligence."); *Nikoghosyan v. AAA Cooper Transportation Inc.*, No. 18-CV-112-TCK-JFJ, 2019 WL 4992100, at *2 (N.D. Okla. Oct. 8, 2019) (finding "distracted driving, while negligent, does not rise to a level supporting a claim for punitive damages.").

Ms. Bird also asserts Mr. Carbajal was "distracted by something other than his driving, and driving recklessly"—but she cites no evidence to support these contentions, and the Court has not found anything in the summary judgment record that supports either contention. *See* [Doc. No. 57] at 30-31; *see also* [Doc. No. 58] at 14. Finally, Ms. Bird references Mr. Carbajal's inability (or limited ability) to speak English, but she wholly fails to explain how that constitutes recklessness or gross negligence. *See id.*[13] For all these reasons, the Court finds that Ms. Bird does not have competent evidence to support her requests for punitive damages.

---

[13] Ms. Bird includes other facts related to punitive damages for her negligent entrustment claim in her response to Millis's Motion, but the Court has found that claim fails as a matter of law.

## V.    <u>Conclusion</u>

IT IS THEREFORE ORDERED that Millis and Mr. Carbajal's Motions for Partial Summary Judgment [Doc. Nos. 39, 40] are GRANTED as set forth above.  Ms. Bird's claims for negligence and vicarious liability remain pending.

IT IS SO ORDERED this 25th day of June, 2025.

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**